**The STATE of Ohio, Appellee,**

v.

**McCALL, Appellant.**

[Cite as *State v. McCall* (1994), 99 Ohio App.3d 409.]

Court of Appeals of Ohio,
Summit County.

No. 16719.

Decided Dec. 21, 1994.

*Lynn Slaby,* Summit County Prosecuting Attorney, and Becky Doherty, Assistant Prosecuting Attorney, for appellee.

*Donald Walker,* for appellant.

QUILLIN, Judge.

Estell McCall, Jr. appeals his convictions for aggravated arson, R.C. 2909.02(A)(2), and possession of a weapon under a disability, R.C. 2923.13(A)(2). He claims that a plastic container of gasoline is not dangerous ordnance for the purposes of R.C. 2923.13(A)(2); that testimony regarding his disability was unfairly prejudicial; and that the jury's verdict was against the manifest weight of the evidence. We reverse in part and affirm in part.

In July 1993, Dorethea Mitchell was in the living room of her home watching television while her son, Napoleon, dozed in a chair, and her other children slept upstairs. Shortly before midnight, she heard a car pull into her driveway. Because it was a high-crime neighborhood, Dorethea had placed "no trespassing" signs in the yard and boards across the driveway. When she heard the car, she went outside to tell the driver that he was trespassing. Dorethea and the driver, who was later identified as McCall, exchanged words. Napoleon came out of the house to see what was happening. McCall revved the car's engine and the car lurched toward Dorethea. In defense, she picked up a brick that had been lying in the yard and threw it at the car, striking the front spoiler between the headlights.

McCall informed Dorethea that she did not understand with whom she was dealing. He then backed the car down the drive and parked it. He got out of the car and opened the trunk. Fearing that he was retrieving a weapon,

Dorethea went into the house to call the police. McCall exchanged words with Napoleon, stated that he would be back, then drove away.

The police arrived a short time later and advised Dorethea that throwing a brick at the car was unwise and that she was likely to have more trouble.

Later that night, alerted by the barking of a neighbor's dog, Dorethea went to an upstairs window and saw a plastic milk container sitting in her yard. Napoleon went outside to investigate and discovered two men standing in the shadows nearby, one of whom he recognized as the man who had been there earlier. Napoleon went back inside the house to call the police. As he did so, he heard someone banging on the front door and then the sound of something splashing against the front door. Dorethea had gone out the back of the house and around to the front, where she saw McCall pouring liquid from the milk container onto the front porch. She went back inside the house; shortly thereafter, she noticed that the porch was on fire.

Dorethea and her three children put most of the fire out, dousing the flames with buckets of water, and the fire department finished the job. An arson investigator determined that the fire had been caused by someone pouring gasoline on the porch and igniting it.

McCall was identified through Dorethea's description of his car, a black IROC Transam with a T-top. McCall was questioned regarding the incident. The arson investigator took photographs of McCall and compiled a photo array, which he showed to the Mitchells. Dorethea and Napoleon both identified McCall as the driver of the car and as one of the men who was at their home during the time the fire was set.

McCall maintained his innocence and claimed to have been elsewhere at the time of the fire. He agreed to take a polygraph test and signed a stipulation that he was taking the test voluntarily and that the polygraphist was qualified to administer the test. The test results, which were admitted without objection, indicated that several of McCall's responses to questions regarding the fire evinced deception.

A jury found McCall guilty of aggravated arson and of having a weapon under a disability. McCall appeals.

## Assignment of Error I

"The state failed to prove beyond a reasonable doubt all elements of the offense of having a weapon under disability in violation of Ohio Revised Code Section 2923.13(A)(2) in that the plastic milk jug cannot be, as a matter of law, an incendiary device or * * * dangerous ordnance."

McCall was convicted of having a weapon under a disability, R.C. 2923.13. The statute provides:

"(A) Unless relieved from disability * * * no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

" * * *

"(2) Such person is under indictment for or has been convicted of any felony of violence, or has been adjudged a juvenile delinquent for commission of any such felony[.]"

It is undisputed that McCall was under a disability at the time of the incident. However, it is disputed whether McCall possessed or used dangerous ordnance. The state contends that the plastic milk jug filled with gasoline was an incendiary device and therefore dangerous ordnance. The Revised Code defines "incendiary device" as follows:

" * * * any firebomb, and any device designed or specially adapted to cause physical harm to persons or property by means of fire, and consisting of an incendiary substance or agency and a means to ignite it." R.C. 2923.11(I).

McCall argues that the plastic milk container cannot be considered an incendiary device merely because it is filled with gasoline. A plastic container of gasoline with nothing more is not a "device" within the meaning of the statute, McCall argues, because it does not contain the means for igniting the incendiary substance. The state contends that McCall must have had a means to ignite the gasoline for the simple reason that it was eventually ignited. The state, though, has not proven what that means was or whether it was part of any device. The state also argues that the container was a device "specially adapted" within the meaning of the statute because the container was originally designed to hold milk. Although the container here was used in a way other than originally intended, we disagree that filling it with gasoline is a special adaptation rendering it an incendiary device.

We hold that, as a matter of law, a plastic container of gasoline, absent a means to ignite it, is not an "incendiary device" within the meaning of R.C. 2923.11(I) and therefore not dangerous ordnance for the purposes of R.C. 2923.13(A). The first assignment of error is sustained and McCall's conviction for having a weapon under a disability is reversed.

### Assignment of Error II

"The trial court erred in allowing the testimony of Kolzing and Phillips because due to the insufficiency as a matter of law of the weapon under a disability charge

their testimony would be otherwise inadmissible and its contents were unduly prejudicial and inflammatory."

At trial, the state introduced the testimony of Ronald Kolzing, McCall's probation officer, and Michael Phillips, an agent with the Federal Bureau of Investigation, for the purpose of proving that McCall was under a disability at the time he used the plastic container to carry gasoline to the Mitchell's front porch. McCall argues that because he could not have been convicted of having a weapon under a disability (because the plastic container of gasoline was not dangerous ordnance), the testimony establishing his disability was unfairly prejudicial and should not have been admitted.

■ McCall did not, though, object to the testimony at trial. Generally, "[a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus. It is true that under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." However, the Supreme Court has repeatedly instructed that this is an exception to the general rule and only to be invoked reluctantly: "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

Here, the testimony of Kolzing and Phillips was essential to prove an element of a charged offense. We cannot say that it was plain error for the court to allow the testimony merely because the state failed to prove every other element of that particular offense. Because McCall has not shown that a manifest miscarriage of justice has occurred, the second assignment of error is overruled.

### Assignment of Error III

"The jury verdict finding appellant McCall guilty of two counts of aggravated arson [R.C. 2909.02(A)(1) and 2909.02(A)(2) ] and having a weapon under a disability [R.C. 2923.13(A)(2) ] was against the manifest weight of the evidence; and the state failed to prove beyond a reasonable doubt all elements of the offenses thereby violating the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio."

Having reversed the conviction of having a weapon under a disability, we will address only the matter of the conviction for aggravated arson. To determine whether a jury has rendered a conviction against the manifest weight of the

evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011.

The Ohio Revised Code defines the crime of aggravated arson as follows:

"(A) No person, by means of fire or explosion, shall knowingly:

"(1) Create a substantial risk of serious physical harm to any person;

"(2) Cause physical harm to any occupied structure[.]" R.C. 2909.02.

■ Here, the state introduced ample evidence to support the jury's verdict. Dorethea and Napoleon both identified McCall's car as the car that pulled into their driveway on the night of the fire. McCall's car had an abrasion on the front spoiler in the same location that Dorethea claimed to have hit the car with a brick. Both Napoleon and Dorethea identified McCall as the driver of the car and as one of the men who appeared at their house immediately before the fire. Dorethea testified that she saw McCall pour the contents of the plastic container out onto the front porch of her home only moments before the fire was set. The arson investigator testified that the fire was caused by someone pouring gasoline onto the porch and igniting it.

■ Although McCall and his fiance testified that he was elsewhere that night, it was the jury's province to assess the credibility of the witnesses and determine whom to believe. *State v. DeHass* (1967) 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. It is clear from the verdict that the jury accepted the testimony of the Mitchells and the state's corroborating evidence. Because McCall has not shown that a manifest miscarriage of justice has occurred, the third assignment of error is overruled.

### Assignment of Error IV

"The trial court erred by failing to properly instruct the jury as to the weight they should give to the testimony of the polygraphist."

McCall failed to object to the jury instruction at the time that it was given. Accordingly, the plain error analysis that applied to Assignment of Error II applies to this assignment of error as well.

■ The trial court instructed the jury on the function of expert witnesses and the weight to be given their testimony:

"Generally a witness may not express an opinion. However, one who follows a profession or special line of work may express his opinion because of their education, knowledge and experience.

"Such testimony is admitted for whatever assistance it may provide you in arriving at a just verdict.

" * * *

"As with other witnesses, upon you alone rests the duty of deciding what weight should be given the testimony of the expert witness.

"In determining its weight, you may take into consideration the expert's skill, experience, knowledge, veracity, and familiarity with the facts of this case, and the usual rules for testing credibility in determining the weight to be given to the expert's testimony."

The court did not specifically identify for the jury which witnesses were experts and which were not. It is clear from the trial transcript, though, that two witnesses qualified as experts, the arson investigator and the polygraphist. Additionally, the court's instruction on expert testimony immediately preceded its instruction on the results of the polygraph exam. We do not believe that the trial court erred in giving the instruction on expert witnesses without specifically stating that it applied to the polygraphist. Moreover, "[w]here a paragraph in a general charge, by itself, is improper and misleading, but when the court's entire charge is considered it is apparent that no prejudicial error resulted, the judgment will not be reversed." *State v. Porter* (1968), 14 Ohio St.2d 10, 43 O.O.2d 5, 235 N.E.2d 520, paragraph two of the syllabus. Considering the jury charge as a whole, we conclude that any imperfection in the jury instruction on the polygraphist did not amount to plain error. The fourth assignment of error is overruled.

The judgment of the trial court is reversed as to McCall's conviction for having a weapon under a disability, but affirmed as to his conviction for aggravated arson.

*Judgment affirmed in part*
*and reversed in part.*

REECE, P.J., and BAIRD, J., concur.