DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} Michael Taylor poured gasoline on Lisa Smith and her porch and tried to set them on fire. He was convicted of felonious assault and attempted aggravated arson. He has appealed, assigning five errors. This Court affirms because Mr. Taylor's lawyer was not ineffective, the trial court properly limited his cross-examination of a witness, the jury instructions were correct, he received a fair trial, there was sufficient evidence to support his convictions, and his convictions were not against the manifest weight of the evidence.
 FACTS *Page 2 {¶ 2} According to Ms. Smith, she met Mr. Taylor in the fall of 2005. They began dating, but started having problems a few months later. On the evening of May 9, 2006, Ms. Smith was leaving the second floor apartment in which she and her sister lived when she saw Mr. Taylor on the sidewalk below. Mr. Taylor was visiting a friend at a different unit, but upon seeing her, told her that "you better get your sister out of here." Ms. Smith returned to her apartment at 2:00 a.m.
 {¶ 3} Around 3:00 a.m., Mr. Taylor began repeatedly calling Ms. Smith from his friend's apartment. He told her that she should come out of her apartment at 3:04 a.m. to "see the blazing fire." Shortly thereafter, Ms. Smith saw Mr. Taylor strip off some of his clothes, run into her apartment, and lie down on her couch. When the telephone rang, he told her, "in a cartoon voice," that his mommy was calling him. Ms. Smith told Mr. Taylor to leave her apartment and he complied. A few minutes later, however, he returned. He handed Ms. Smith a card for a television news reporter and asked her to call the reporter for him.
 {¶ 4} Mr. Taylor returned to Ms. Smith's apartment around 6:45 a.m. and knocked on her door. Ms. Smith opened her main door, but not her screen door, and watched Mr. Taylor walk downstairs. When Mr. Taylor returned upstairs, he had a one to two gallon can of gasoline and began pouring it on the porch in front of her unit and sloshing it inside her screen door. Ms. Smith went onto the porch and struck Mr. Taylor, trying to get the can from him, but Mr. Taylor then began *Page 3 
pouring gasoline on her. When some splashed on him, Mr. Taylor told Ms. Smith that, "if we were going down, we were going down together."
 {¶ 5} When Mr. Taylor finished pouring the gasoline, he went back downstairs. He took his shirt off, ripped part of it off, and stuffed that part in the gas can. He used a lighter to ignite the shirt part and attempted to throw the gas can up onto the porch. Before he could toss it, however, Eugene Waiters, a resident from another unit, knocked the can out of his hand.
 {¶ 6} According to Mr. Waiters, he was walking around the apartment complex on the morning of May 10, 2006, when he saw Mr. Taylor get a gas can out of a mutual friend's car. He saw Mr. Taylor go upstairs in front of Ms. Smith's apartment and begin pouring the gasoline, stating that he was going to burn her up. After Mr. Taylor finished, Mr. Waiters saw him take his shirt off and use a lighter to ignite it. Mr. Taylor attempted to throw the shirt onto the porch, but Mr. Waiters hit his hand and blocked him from doing so. After Mr. Taylor failed to toss the shirt, he ran away.
 {¶ 7} Ms. Smith testified that, as Mr. Taylor was attempting to ignite his shirt, she called 911. In the 911 call, Ms. Smith told the dispatcher that Mr. Taylor had poured gasoline on her, inside her apartment, and on the porch and that she believed he was about to set her on fire. While on the phone with the dispatcher, Ms. Smith yelled for Mr. Waiters to stop Mr. Taylor. In the background of the 911 call, a male voice can be heard yelling "[w]e all going down." Ms. Smith *Page 4 
described to the dispatcher that Mr. Taylor had removed his shirt, tore it into strips, placed it into the opening of the gas can, lit it on fire, and attempted to throw the can onto the porch.
 {¶ 8} The police responded within a few minutes, and the fire department responded shortly thereafter. Firefighters extinguished the burning gas can, which had burned a small patch of grass below Ms. Smith's apartment. They also flushed Ms. Smith's porch with water and used laundry detergent to break down any remaining gasoline.
 {¶ 9} Mr. Taylor told a much different story. According to him, he had stopped by the apartment complex to get title to a van he had purchased from Mr. Waiters a couple of days earlier. When he tried to leave, however, the van would not start. He decided to call his mother from a payphone, but because the only payphones in the area were at a nearby hospital, he set the bags he had with him on the sidewalk. When he returned to his van, Ms. Smith had taken his bags up to her apartment. He claimed Ms. Smith was upset with him because he had gotten back together with his fiancée.
 {¶ 10} Mr. Taylor testified that he went back to working on his van. Because the fuel filter was not working correctly, he needed to prime the engine with gasoline. As he was doing this, he saw Ms. Smith outside of her apartment. He therefore ran upstairs, still holding the gas can, to ask for his bags back. When he confronted Ms. Smith, however, she started attacking him, causing gasoline to *Page 5 
splash out of the can onto both of them and the porch. Ms. Smith then yelled for Mr. Waiters to "get him."
 {¶ 11} As Mr. Taylor went back downstairs, he removed his shirt to wipe off the gasoline that had splashed on him. He then saw Mr. Waiters start to pull a gun out on him. Mr. Taylor, therefore, lit the gas can on fire and swung it at Mr. Waiters. Mr. Taylor then threw the can and started running to get away from Mr. Waiters. Mr. Taylor testified that Mr. Waiters was upset with him because he thought he owed him an additional $100 for the van.
 {¶ 12} Mr. Taylor has assigned multiple errors. He has argued that his trial lawyer was ineffective, that the trial court improperly limited his ability to cross-examine witnesses, that the jury instructions were incomplete, that the cumulative effect of those errors deprived him of a fair trial, that there was insufficient evidence to support his convictions, and that the verdict was against the manifest weight of the evidence.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 13} Mr. Taylor's first assignment of error is that his trial lawyer was ineffective. He must show that his lawyer's performance was deficient and that he was prejudiced by the deficiency. Strickland v.Washington, 466 U.S. 668, 687 (1984).
 {¶ 14} To establish that his lawyer was deficient, Mr. Taylor must show that his lawyer's representation "fell below an objective standard of *Page 6 
reasonableness." Id. at 688. To establish prejudice, he must show that there is a reasonable probability that, but for his lawyer's errors, the result of his trial would have been different. Id. at 694; State v.Bradley, 42 Ohio St. 3d 136, paragraph three of the syllabus (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
 VOIR DIRE {¶ 15} Mr. Taylor has argued that his lawyer should have objected to four statements that the prosecutor made during voir dire that, he has alleged, mischaracterized the standard of proof beyond a reasonable doubt. The first statement was:
 The Judge will give you a jury instruction on what beyond a reasonable doubt is. And the standard is that you must be firmly convinced of your decision. Goes to the weight and credibility of the evidence; basically, who you believe.
 Does anyone think it means give the Defendant the benefit of the doubt? Because it is supposed to be a fair trial, both for defense and for the State, so beyond a reasonable doubt refers to the credibility of the evidence.
The second statement was:
 What if you are sitting back there, selected as a juror, and you think, I wonder why they didn't test the gasoline? I wonder why they didn't take photos of this? Why they didn't do that?
 What are you doing? You are speculating.
 Does everyone understand you are not to speculate. You are to make the decision only on the evidence you have in front of you, because everything is subject to speculation.
The third statement was: *Page 7 
 This is kind of an interesting story. I tell it in everyone of my Voir Dires.
 I had a rape case a few years back when I was a fairly new Prosecutor. They found a pubic hair on the victim's underwear. Now, the victim knew the perpetrator, the alleged perpetrator, so I said, let's test it and see if it is his pubic hair.
 So, I call the Attorney General's Office, who does our genetic testing, and they tell me that is not good science. No, no. I just saw it on CSI. Of course it is good science.
 Just to double-check I called the county Coroner's Office, and they tell me the same thing.
 So, a lot of those TV shows are fictional, or the science is no good. It is fictional for purposes of solving their fictional crimes.
The fourth statement was:
 Let's say we have, you are selected as a juror and you have one witness who says yes, he did it, and another witness who gets up on the stand and says no, he didn't do it. I am not going to give you a hypothetical about what he did and what he didn't do. But yet two people saying two different things under oath. Clearly, somebody is lying.
 Is that reasonable doubt to you?
 I used to think it was. I'm going to tell you the truth. I used to think it was. But it is not, and the Judge will tell you it's not.
Mr. Taylor has asserted that these statements instructed the jury that they were not to give him the benefit of the doubt, that they were not to speculate about why certain things were not done during the investigation, that they were not to question holes in the evidence, and that conflicts in evidence did not rise to the level of reasonable doubt. *Page 8 
 {¶ 16} "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." State v. Bradley,42 Ohio St. 3d 136, 143 (1989) (quoting Strickland, 466 U.S. at 697). Accordingly, because Mr. Taylor has not established that it is reasonably probable that the result of his trial would have been different if his lawyer had objected to the prosecutor's statements, this Court will begin with the prejudice element.
 {¶ 17} "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." State v. Garner,74 Ohio St. 3d 49, 59 (1995). In this case, the trial court instructed the jury regarding the correct standard for reasonable doubt both before the parties' opening statements and after their closing arguments. Following voir dire, the trial court told the jury that it was their duty to follow the law as they were instructed. It also told them to "apply the test for truthfulness" that they applied in their daily lives. The court instructed the jurors that they should not decide an issue merely on the basis of the number of witnesses who testified on each side of the issue and that discrepancies in a witness' statement did not necessarily mean that the witness should be disbelieved. The trial court further instructed the jury that it was the prosecution's burden to prove the elements of the offense charged and that Mr. Taylor was presumed innocent until the prosecution established his guilt beyond a reasonable doubt. The court defined reasonable doubt as being present "when, after you have *Page 9 
carefully considered and compared all the evidence, you cannot say that you are firmly convinced of the truth of the charge."
 {¶ 18} Following the closing arguments, the trial court instructed the jury that it was their "sworn duty to accept these instructions and to apply the law as it is given to you." The trial court restated the reasonable doubt instruction it had given earlier and reminded the jury that the opening statements and closing arguments of counsel were not evidence. Accordingly, even assuming that the prosecutor's statements were improper, Mr. Taylor has not pointed to any evidence rebutting the presumption that the jury followed the trial court's instructions. His lawyer's failure to object to the prosecutor's statements, therefore, was not prejudicial.
 CLOSING ARGUMENT {¶ 19} Mr. Taylor has next argued that his lawyer was ineffective for failing to object to improper statements made by the prosecutor during closing arguments. He has asserted that the prosecutor misstated the standard for reasonable doubt, suggested that Mr. Taylor might get treatment or rehabilitation instead of a prison sentence, and expressed his personal opinion of the evidence.
 {¶ 20} Regarding the standard for reasonable doubt, the prosecutor told the jury:
 Basically, what this comes down to is who is credible? Who do you believe? If someone is clearly lying. That is what I talked to you about in Voir Dire. It comes down to, who do you believe? Who has the motive to lie? *Page 10 
The prosecutor later reiterated:
 Like I talked about in Voir Dire, I talked about before, that is not reasonable doubt because one person says one thing and someone says something else.
Mr. Taylor has asserted that his lawyer should have objected to those statements because they set forth an incorrect standard for reasonable doubt.
 {¶ 21} Mr. Taylor's argument fails for the reasons stated above. Specifically, in light of the presumption that the jury followed the trial court's instructions, Mr. Taylor has failed to show that it is reasonably probable that the outcome of his trial would have been different if his lawyer had objected.
 {¶ 22} Regarding the prosecutor's suggestion that Mr. Taylor might receive treatment instead of prison, the prosecutor stated:
 You also heard mentioned briefly that the Defendant stated he was facing 22 years. Like I talked to you in Voir Dire, also, you are not to consider that. Punishment, treatment, or any type of rehabilitation is going to be left strictly to the Judge.
Mr. Taylor has asserted that this comment suggested to the jury the possibility that he might not receive a prison sentence, even if he was convicted.
 {¶ 23} This Court concludes that the prosecutor's passing suggestion that treatment and rehabilitation are complementary with, or alternatives to, punishment did not prejudice Mr. Taylor. The prosecutor told the jury that they were not to consider punishment and the trial court also instructed the jury that they "may not discuss or consider the subject of punishment." Mr. Taylor, *Page 11 
therefore, has failed to show that the outcome of his trial would have been different if his lawyer had objected to the prosecutor's statement.
 {¶ 24} Regarding the prosecutor's personal opinion comments, he first discussed Mr. Taylor's testimony and pointed out statements that he asserted defied common sense. The prosecutor noted that Mr. Taylor testified that he left his belongings on the sidewalk when he could have easily locked them inside his van. He pointed out that Mr. Taylor claimed he accidentally took the gas can upstairs with him when he went to confront Ms. Smith. He also noted that Mr. Taylor claimed he was able to take his shirt off and light the gas can on fire, all while Mr. Waiters was pointing a gun at him over a mere $100 debt. The prosecutor wondered why Mr. Taylor was not afraid of the gas can blowing up. He also wondered why Ms. Smith had not said anything about Mr. Waiters having a gun during her 911 call. The prosecutor concluded:
 The Defendant I submit to you did not tell the truth, and based upon that the testimony of the witnesses, the credibility of the evidence, I think the only reasonable verdict is guilty on all three counts.
Mr. Taylor has asserted that this was an improper argument.
 {¶ 25} "[T]he prosecution . . . [has] wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Stephens, 24 Ohio St. 2d 76, 82 (1970). It is improper for a prosecutor, however, "to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." State v. Smith, 14 Ohio St. 3d 13, 14 *Page 12 
(1984). Nevertheless, "where personal opinions of guilt are predicated upon the evidence, . . . they are not deemed to be prejudicially erroneous." Stephens, 24 Ohio St. 2d at 83. "A prosecutor's closing remarks do not appeal to the passion or prejudice of the jury where such remarks comment fairly on the credibility of crucial state witnesses and do not constitute an invitation to the jury to go beyond the evidence presented." State v. Price, 60 Ohio St. 2d 136, paragraph three of the syllabus (1979).
 {¶ 26} Because Mr. Taylor's testimony was vastly different from the testimony of the State's witnesses, it was clear that one side was not telling the truth. The prosecutor detailed the problems he saw in Mr. Taylor's testimony and the consistency of the State's witnesses. In doing so, he did not go outside the evidence that was presented or imply that he had inside information regarding any witness's truthfulness. This Court, therefore, concludes that his statement in his closing argument regarding whether Mr. Taylor was telling the truth was not prejudicial. Accordingly, Mr. Taylor's lawyer's failure to object to the statement did not constitute ineffective assistance.
 NOT GUILTY BY REASON OF INSANITY {¶ 27} Mr. Taylor has next argued that Ms. Smith's testimony about his bizarre early morning behavior raised a question about his sanity at the time of the offense. He has asserted that his lawyer, therefore, should have filed a not guilty by reason of insanity plea and had him evaluated by a psychiatrist. *Page 13 
 {¶ 28} Ms. Smith testified that, shortly after 3:00 a.m., she saw Mr. Taylor running down the sidewalk outside her apartment, stripping off his clothing. He ran into her apartment wearing only a t-shirt and boxers, lay down on her couch, and began saying that his mommy was calling him. The phone then rang, and Mr. Taylor told her, in a cartoon voice, that it was his mommy calling. Ms. Smith later told the 911 dispatcher that Mr. Taylor was crazy.
 {¶ 29} After the State finished presenting its evidence, it requested an instruction prohibiting the jury from finding Mr. Taylor not guilty by reason of insanity. Mr. Taylor's lawyer objected, arguing that there had not been any testimony regarding Mr. Taylor's mental health and asserting that raising the issue would prejudice his client. Mr. Taylor's lawyer also told the judge that he had talked to Mr. Taylor a few times about entering such a plea, but concluded that it was not appropriate.
 {¶ 30} To prove insanity under Section 2901.01(A)(14) of the Ohio Revised Code, Mr. Taylor would have had to show that he "did not know, as a result of a severe mental disease or defect, the wrongfulness of [his] acts." It is evident from the record that Mr. Taylor's lawyer considered this defense, but did not believe it was viable. Instead of attacking his client's mental health, he focused on undermining the credibility of the State's witnesses and relied on Mr. Taylor testifying consistently and persuasively about his version of the events. While this strategy may have proved ineffective, it does not establish that Mr. Taylor's *Page 14 
lawyer's representation was deficient. See State v. Clayton,62 Ohio St. 2d 45, 49 (1980) (concluding that even though lawyer's strategy not to raise a defense was questionable, it had to defer to his judgment).
 MISSING WITNESSES {¶ 31} Mr. Taylor has next argued that his lawyer was ineffective because he failed to request a continuance after several of his potential witnesses failed to appear. Mr. Taylor, however, has failed to identify who those witnesses were or indicate how their testimony would have been material to his defense. Accordingly, he has failed to demonstrate that he was prejudiced by his lawyer's decision not to move for a continuance. See State v. Peck, 2d Dist. No. 21354,2006-Ohio-5796, at ¶ 65 (denying ineffective assistance claim on direct appeal because record failed to indicate how missing witness's testimony would have been helpful).
 CHARACTER EVIDENCE {¶ 32} Mr. Taylor has next argued that his lawyer was ineffective because he failed to object to improper character evidence. He has asserted that his lawyer should have objected when a police officer testified that he knew Mr. Taylor from previous arrests, when the prosecutor asked Mr. Taylor whether he had a motive to lie, when the prosecutor asked Mr. Taylor whether he had ever done drugs, and when the prosecutor asked Mr. Taylor about another problem he had had at the apartment complex. *Page 15 
 {¶ 33} Under Rule 404(A) of the Ohio Rules of Evidence, character evidence is generally not admissible to show propensity. Regarding the police officer's testimony that he knew Mr. Taylor "from previous arrests and an incident," the record demonstrates that Mr. Taylor's lawyer's failure to object was a tactical decision. "[T]he failure to object to an error at trial may be justified as a trial tactic and thus does not sustain a claim of ineffective assistance of counsel."State v. Miller, 9th Dist. No. 23240, 2007-Ohio-370, at ¶ 10; seeState v. Conway, 108 Ohio St. 3d 214, 2006-Ohio-791, at ¶ 168.
 {¶ 34} On direct examination of Mr. Taylor, his lawyer asked about his conviction for carrying a concealed weapon and ascertained that it had occurred more than ten years earlier. This Court, therefore, concludes that Mr. Taylor's lawyer had decided to clarify Mr. Taylor's criminal record through his own testimony rather than objecting to the prosecutor's question to the police officer. Mr. Taylor's lawyer's performance was not deficient because he failed to object to the prosecutor's question to the police officer.
 {¶ 35} Regarding the prosecutor's questions about his motive to lie, Mr. Taylor has failed to establish prejudice. Mr. Taylor has asserted that the prosecutor's questions laid the groundwork for his allegedly improper closing argument, in which he expressed his opinion about the credibility of the witnesses. As noted previously, however, the prosecutor's statements about Mr. Taylor's *Page 16 
credibility were not prejudicial. Furthermore, the trial court instructed the jury that it was not allowed to consider the closing arguments as evidence.
 {¶ 36} Regarding the prosecutor's question about Mr. Taylor's drug use, although Mr. Taylor's lawyer did not object to that question, he successfully objected to a follow-up question about whether Mr. Taylor had used drugs the night before the incident. The trial court had previously allowed Mr. Taylor's lawyer to ask Mr. Waiters about his conviction for possession of cocaine. Accordingly, even if Mr. Taylor's lawyer had objected, it is not reasonably likely that his objection would have been successful or that the result of his trial would have been different.
 {¶ 37} Regarding the previous incident at the apartment complex, although Mr. Taylor admitted there was a previous incident, his lawyer successfully objected to a question about the details of that incident. Mr. Taylor subsequently testified that he had accepted complete responsibility for the incident, that he had agreed to pay restitution, and that he was not banned from the complex as a result. He has failed to establish how testimony about the previous incident prejudiced him. In fact, Mr. Taylor's acceptance of responsibility for his actions actually would have been positive character evidence.
 HEARSAY *Page 17 {¶ 38} Mr. Taylor has next argued that his lawyer was ineffective because he failed to object to inadmissible hearsay. He has asserted that his lawyer should have objected to a police officer's testimony about what Ms. Smith and Mr. Waiters said to him, about the results of a test conducted on the gas can, and to the admission of the 911 recording. He has asserted that this testimony violated the Ohio Rules of Evidence and the Confrontation Clause of the United States Constitution's Sixth Amendment.
 {¶ 39} Hearsay is generally not admissible. See Evid.R. 802. Rule 801(C) of the Ohio Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Testimonial out-of-court statements presented in a criminal trial also "violate the Confrontation Clause unless the witness was unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the witness." State v. Crager, 116 Ohio St. 3d 369,2007-Ohio-6840, at ¶ 41 (citing Crawford v. Washington, 541 U.S. 36,53-54 (2004)).
 {¶ 40} Regarding the police officer's testimony about what Ms. Smith and Mr. Waiters told him, Mr. Taylor's lawyer's failure to object was not prejudicial. The officer merely repeated what Ms. Smith and Mr. Waiters had already testified to. In addition, because Ms. Smith and Mr. Waiters both testified at trial, the officer's statements did not violate the Confrontation Clause. *Page 18 
 {¶ 41} Regarding the test conducted on the gas can, Mr. Taylor, himself, admitted that it contained gasoline. In fact, considering that Mr. Taylor testified that he was using the gasoline in the can to start his van, it was essential to his testimony that the can contained gasoline. Mr. Taylor, therefore, was not prejudiced by his lawyer's failure to object.
 {¶ 42} Regarding the 911 call, it would have been admissible as an excited utterance, even if Mr. Taylor's lawyer had objected. SeeState v. Smith, 80 Ohio St. 3d 89, 107 (1997). Furthermore, because the call detailed events as they were actually happening, its introduction did not violate the Confrontation Clause. Davis v. Washington,547 U.S. 813, 822 (2006) ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."). Moreover, even if part of the 911 call was testimonial, because Ms. Smith testified at trial and was available for cross-examination, there was no Confrontation Clause violation.
 SELF-DEFENSE INSTRUCTION {¶ 43} Mr. Taylor has next argued that his lawyer was ineffective because he failed to request a jury instruction on self-defense. Mr. Taylor has asserted that his testimony established that the reason he lit the gas can on fire was to defend himself from Mr. Waiters. *Page 19 
 {¶ 44} Section 2901.05(A) of the Ohio Revised Code provides that "the burden of proof . . . for an affirmative defense, is upon the accused." The standard for whether a criminal defendant has successfully raised an affirmative defense under Section 2901.05 is "whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." State v. Melchior, 56 Ohio St. 2d 15, paragraph one of the syllabus (1978). Self-defense requires a defendant to prove:
 (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.
State v. Barnes, 94 Ohio St. 3d 21, 24 (2002).
 {¶ 45} Mr. Taylor was indicted for feloniously assaulting Ms. Smith, the attempted aggravated arson of Ms. Smith, and the attempted aggravated arson of Ms. Smith's property. Accordingly, because none of the charges involved Mr. Taylor's conduct toward Mr. Waiters, Mr. Taylor's lawyer was not ineffective for failing to propose a self-defense instruction.
 FLIGHT INSTRUCTION {¶ 46} Mr. Taylor has next argued that his lawyer was ineffective because he failed to object to the trial court's incomplete flight instruction. The trial court instructed the jury: *Page 20 
 In this case, there is evidence tending to indicate the Defendant fled from the vicinity of the alleged crime.
 In this regard, you are instructed that flight in and of itself does not raise a presumption of guilt, but it may tend to show consciousness of guilt or a guilty connection with the crime.
 If, therefore, you find the Defendant did flee from the scene of the alleged crime, you may consider the circumstances of this case when determining the guilt or innocence of the Defendant.
 Upon you alone rests the decision to determine what weight, if any, to place upon the evidence you find, if any, bearing upon this issue.
Mr. Taylor has asserted that the trial court's instruction omitted crucial language from the Ohio Jury Instructions that would have instructed the jury that "if you find that the facts do not support that the defendant fled the scene, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose."
 {¶ 47} This Court has repeatedly concluded that flight instructions that were materially identical to the ones given in this case were proper. See State v. Gibson, 9th Dist. No. 23881, 2008-Ohio-410, at ¶ 19; State v. Villa, 9th Dist. No. 05CA008773, 2006-Ohio-4529, at ¶ 30; State v. Brady, 9th Dist. No. 22034, 2005-Ohio-593, at ¶ 9;State v. Davilla, 9th Dist. No. 03CA008413, 2004-Ohio-4448, at ¶ 16. The instructions in none of those cases included the language Mr. Taylor asserts was required. Mr. Taylor, therefore, has not shown that he suffered any prejudice from his attorney's failure to object to the trial court's flight instruction. *Page 21 
 "KNOWINGLY" INSTRUCTION {¶ 48} Mr. Taylor has next argued that his lawyer was ineffective because he failed to object to the trial court's instruction on the term "knowingly." The trial court defined knowingly as:
 A person acts knowingly, regardless of their purpose, when he is aware that [his] conduct will probably cause a certain result or that the conduct will be of a certain nature.
 A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence.
Mr. Taylor has asserted that the instruction should have included an additional sentence:
 You will determine from these facts and circumstances whether there existed at the time in the mind of the defendant an awareness of the probability that (his conduct in lighting the gas can on fire would cause serious physical harm to Lisa Smith or her property).
Mr. Taylor believes this statement contained a critical part of the mens rea instruction and corresponded with a police officer's testimony that if you throw a cigarette into a puddle of gasoline, it will not ignite.
 {¶ 49} "The instructions found in Ohio Jury Instructions are not mandatory." State v. Martens, 90 Ohio App. 3d 338, 343 (1993) (concluding that a trial court is not required to give additional instructions because they are contained in the Ohio Jury Instructions). "A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made *Page 22 
before the jury by the proof adduced." Marshall v. Gibson,19 Ohio St. 3d 10, 12 (1985). "[Instructions must be read as a whole." State v.Sanders, 92 Ohio St. 3d 245, 264 (2001).
 {¶ 50} While the omitted sentence is part of the pattern jury instructions, it is not part of the Ohio Revised Code's definition of knowingly:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
R.C. 2901.22(B). The trial court's instruction on knowingly followed the statutory language exactly and was an accurate statement of law. The jury, therefore, was properly instructed. Accordingly, Mr. Taylor's lawyer was not required to object to the instruction.
 ATTEMPT INSTRUCTION {¶ 51} Mr. Taylor has next argued that his lawyer was ineffective because he failed to object to the trial court's attempt instruction. He has asserted that the trial court's instruction for attempted aggravated arson was deficient because it left out the definition of attempt, as set forth in the Ohio Revised Code.
 {¶ 52} Although the trial court did not use the language of the statute or the Ohio Jury Instructions during its instruction regarding attempted aggravated arson, it had already provided a definition for attempt when it instructed the jury on felonious assault. Because this prior definition of attempt, coupled with the *Page 23 
definition of the principal offense of aggravated arson, adequately stated the law for attempted aggravated arson, there was no need for Mr. Taylor's lawyer to object when the trial court failed to repeat the attempt part of the instruction.
 ABANDONMENT INSTRUCTION {¶ 53} Mr. Taylor has next argued that his lawyer should have objected when the trial court failed to give an instruction on the affirmative defense of abandonment. A court, however, may "refuse to give an instruction which is not applicable to the evidence governing the case. . . ." State v. Cross, 58 Ohio St. 2d 482, 488 (1979). The affirmative defense of abandonment of an attempt requires the defendant to abandon his efforts to commit the offense by "manifesting a complete and voluntary renunciation of [his] criminal purpose." R.C. 2923.02(D). Renunciation is not voluntary when it is done "out of fear that the police might be coming." State v. Woods, 48 Ohio St. 2d 127, 133 (1976),rev'd on other grounds, 438 U.S. 910 (1978).
 {¶ 54} Mr. Taylor has asserted that Mr. Waiters's testimony that Mr. Taylor dropped the burning gas can and ran from the scene was evidence of renunciation. Mr. Taylor, however, failed to present evidence that the renunciation was voluntary; that he had not dropped the gas can and ran in response to hearing Ms. Smith on the phone with the 911 dispatcher or the approaching police sirens. Accordingly, Mr. Taylor has not established that he was entitled to an abandonment instruction. *Page 24 
 "PURPOSELY" INSTRUCTION {¶ 55} Mr. Taylor has next argued that his lawyer should have objected to the trial court's failure to define the term "purposely," after stating that was the requisite mental state for attempt. The trial court instructed the jury that the essential elements for attempted aggravated arson were that Mr. Taylor "by means of fire or explosion; did attempt to knowingly create; a substantial risk of serious physical harm to Lisa Smith. . . ." It stated that criminal attempt "is when one purposely does or fails to do anything which is an act or omission constituting a substantial step in the course of conduct planned to culminate in his commission of the crime." The trial court, however, did not provide the jury with a definition for the term "purposely."
 {¶ 56} Section 2923.02(A) of the Ohio Revised Code provides that the culpable mental state for attempt is either purposely or knowingly, depending on the culpability required to commit the offense allegedly attempted. Section 2909.02(A) provides that the culpable mental state for aggravated arson is knowingly. To prove the attempted aggravated arson charge, therefore, the State only had to show that Mr. Taylor's conduct was done "knowingly." This Court has previously concluded that the trial court properly instructed the jury on that term. Furthermore, Mr. Taylor has not asserted that the jury was confused by the trial court's criminal attempt instruction. Accordingly, he has failed to show that *Page 25 
the trial court's failure to define the term "purposely" prejudicially affected the outcome of his trial.
 JURY POLLING {¶ 57} Mr. Taylor's final ineffective assistance argument is that his lawyer should have asked that the jury be polled. Mr. Taylor, however, has failed to allege how the failure to poll the jury prejudiced him. The jury verdict forms, which indicated a finding of guilty for each count, were signed in ink by all twelve jurors. Mr. Taylor, therefore, has not provided this Court with any evidence that the outcome of his trial would have been different if the jury would have been polled. Mr. Taylor's first assignment of error is overruled.
 LIMITED CROSS-EXAMINATION {¶ 58} Mr. Taylor's second assignment of error is that the trial court improperly limited his cross-examination of a witness, depriving him of his right to a fair trial. He has asserted that the trial court should have permitted him to question Mr. Waiters about his drug use, his prior convictions, and his possession of a firearm.
 {¶ 59} Rule 611(B) of the Ohio Rules of Evidence permits cross-examination "on all relevant matters and matters affecting credibility." "Cross-examination of a witness is a matter of right, but the `extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.'"State v. Green, 66 Ohio St. 3d 141, 147 (1993) (quoting Alford v.United States, *Page 26 282 U.S. 687, 691, 694 (1931)). This discretion includes the decision whether to permit or deny a defendant "the right to introduce evidence in support of his case during the cross-examination of his adversary's witness." Cities Service Oil Co. v. Burkett, 176 Ohio St. 449, 452
(1964).
 {¶ 60} On cross-examination, Mr. Waiters testified that he was on parole for possession of cocaine and passing bad checks. The trial court sustained objections, however, to questions about how long ago he had been convicted, whether he still used drugs, and whether he normally carries a firearm. Mr. Taylor has asserted that those questions should have been permitted because he later testified that Mr. Waiters and Ms. Smith had been doing drugs the night of the incident. Mr. Waiters's possession of a firearm may also have violated the terms of his parole. According to Mr. Taylor, his questions may have shown that Mr. Waiters was under the influence of drugs at the time of the events and that he had reason to shade his testimony to corroborate Ms. Smith's.
 {¶ 61} Regarding Mr. Waiters's prior convictions, the trial court let Mr. Taylor verify their existence and the fact that Mr. Waiters was still on parole. Mr. Taylor has not demonstrated that establishing how long ago Mr. Waiters was convicted was relevant. Mr. Taylor has also not demonstrated that his question about whether Mr. Waiters uses drugs, in general, was relevant. Mr. Taylor failed to ask specifically whether Mr. Waiters had used any drugs the night before or the morning of the incident. *Page 27 
 {¶ 62} Regarding the firearm, the testimony Mr. Taylor attempted to elicit was not relevant to the prosecutor's case, but only to his claim of self-defense. Because Mr. Waiters denied having a firearm at the time of the incident, whether he carried one at other times was irrelevant. The only witness who mentioned that Mr. Waiters had a firearm was Mr. Taylor. Mr. Taylor had the ability to recall Mr. Waiters or present other witnesses in support of his argument. The trial court, therefore, did not err when it limited the scope of Mr. Taylor's cross-examination of Mr. Waiters. See State v. Williams, 3d Dist. No. 1-85-2, 1986 WL 5907
at *1 (May 19, 1986) (concluding the trial court did not abuse its discretion when it prohibited the defendant from presenting evidence in support of his affirmative defense during the prosecution's case-in-chief). Mr. Taylor's second assignment of error is overruled.
 JURY INSTRUCTIONS {¶ 63} Mr. Taylor's third assignment of error is that the trial court's incomplete jury instruction definitions of flight, knowingly, and attempt constituted plain error. Because this Court previously determined that the jury was properly instructed on all three terms, Mr. Taylor's third assignment of error is overruled.
 FAIR TRIAL {¶ 64} Mr. Taylor's fourth assignment of error is that the cumulative effect of his lawyer's and the trial court's errors deprived him of a fair trial. He is *Page 28 
correct that the cumulative effect of individually harmless errors may result in the deprivation of a defendant's right to a fair trial.State v. DeMarco, 31 Ohio St. 3d 191, paragraph two of the syllabus (1987). Because this Court has not found multiple instances of harmless error, however, the doctrine is inapplicable to this case. State v.Garner, 74 Ohio St. 3d 49, 64 (1995). Mr. Taylor's fourth assignment of error is overruled.
 SUFFICIENCY OF THE EVIDENCE {¶ 65} Mr. Taylor's fifth assignment of error is that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. "Inasmuch as a court cannot weigh the evidence unless there is evidence to weigh," this Court will first consider his argument that his convictions were not supported by sufficient evidence. See Whitaker v. M.T. Automotive Inc., 9th Dist. No. 21836,2007-Ohio-7057, at ¶ 13.
 {¶ 66} Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v.Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. Taylor's guilt. *Page 29 
 FELONIOUS ASSAULT {¶ 67} Mr. Taylor was convicted of violating Section 2903.11(A)(2) of the Ohio Revised Code:
 (A) No person shall knowingly do either of the following:
 . . . .
 (2) Cause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance.
Section 2923.11(K)(2) defines "dangerous ordinance" as "[a]ny explosive device or incendiary device." Incendiary device means "any device designed or specially adapted to cause physical harm to persons or property by means of fire, and consisting of an incendiary substance or agency and a means to ignite it." R.C. 2923.11(I).
 {¶ 68} This Court has previously held that "a plastic container of gasoline, absent a means to ignite it, is not an `incendiary device' within the meaning of R.C. 2923.11(I) and therefore not dangerous ordnance for the purposes of R.C. 2923.13(A)." State v. McCall,99 Ohio App. 3d 409, 412 (1994). Ms. Smith testified, however, that, after Mr. Taylor poured gasoline on her, her porch, and inside her apartment, he intentionally stuffed part of his shirt inside the gas can, lit it, and attempted to throw it onto her porch. Accordingly, there was sufficient evidence for the jury to find that Mr. Taylor knowingly attempted to cause harm to Ms. Smith through the use of an incendiary device. *Page 30 
 ATTEMPTED AGGRAVATED ARSON {¶ 69} Mr. Taylor was also convicted of violating Sections2909.02(A)(1) and (2) and Section 2923.02(A) of the Ohio Revised Code. Section 2909.02(A) provides:
 (A) No person, by means of fire or explosion, shall knowingly do any of the following:
 (1) Create a substantial risk of serious physical harm to any person other than the offender
 (2) Cause physical harm to any occupied structure;
 . . . .
Section 2923.02(A) provides:
 (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
Ms. Smith and Mr. Waiters testified that Mr. Taylor intentionally poured gasoline on Ms. Smith's porch and person and attempted to set them on fire. Accordingly, there was sufficient evidence to support his attempted aggravated arson convictions.
 MANIFEST WEIGHT {¶ 70} When a defendant argues that his convictions are contrary to the manifest weight of the evidence, the appellate court must review and weigh all the evidence that was before the trial court:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of *Page 31 
witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 71} Mr. Taylor admitted that there was gasoline on Ms. Smith and her porch, that he lit the gas can on fire, and that he swung the burning gas can in the air. The only question was whether he intended to ignite the gasoline-soaked porch and Ms. Smith. Multiple witnesses testified that Mr. Taylor told Ms. Smith that he was going to burn her up. Accordingly, having reviewed and weighed all the evidence that was before the trial court, this Court cannot say that the jury lost its way and created a manifest miscarriage of justice when it found that Mr. Taylor knowingly attempted to cause harm to Ms. Smith and the apartment building by means of fire. Mr. Taylor's fifth assignment of error is overruled.
 CONCLUSION {¶ 72} Mr. Taylor was not denied effective assistance of counsel and the trial court did not improperly limit his cross-examination of witnesses. The jury instructions were not incomplete, and Mr. Taylor was also not deprived of his right to a fair trial. Finally, Mr. Taylor's convictions are supported by sufficient evidence and are not contrary to the manifest weight of the evidence. His assignments of error are overruled, and the judgment of the Lorain County Court of Common Pleas is affirmed. *Page 32 
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 SLABY, P. J., MOORE, J., CONCUR *Page 1