OPINION
{¶ 1} Appellant, Tim G. Breland, appeals from the April 30, 2003 judgment entry of the Ashtabula County Court of Common Pleas, in which he was sentenced for gross sexual imposition.
 {¶ 2} On August 9, 2002, appellant was indicted by the Ashtabula County Grand Jury on one count of gross sexual imposition, a felony of the third degree, in violation of R.C. 2907.05(A)(4). On August 20, 2002, appellant was arraigned and entered a plea of not guilty.
 {¶ 3} A jury trial commenced on January 15, 2003. On January 16, 2003, the jury returned a verdict of guilty.
 {¶ 4} The facts at trial revealed that on or about July 23, 2001, the eleven-yearold victim's mother and stepfather, Dana and Robert Frazee ("the Frazees"), went to Florida on their honeymoon. The Frazees left the victim and her nine-year-old sister with their daughters' thirty-four-year-old uncle, appellant, and his wife, Tina Breland ("Tina").
 {¶ 5} According to the victim, she was at appellant's house taking a nap on the couch while her sister and some other children played outside. The victim testified that she was wearing shorts and a t-shirt and was lying on her back. The victim indicated that she woke up and discovered appellant on his knees with his hand underneath her underwear for "[a] couple of seconds or more than a second." The victim stated that appellant touched her private area, moved his hand around, and put his hand inside her. The victim said that she was so scared to talk to appellant that she got up and locked herself in the bathroom.
 {¶ 6} The victim testified that she opened the bathroom door and yelled for her sister. The victim indicated that she told her sister what had happened and they remained in the locked bathroom for approximately twenty to thirty minutes. At that time, the victim stated that appellant asked her and her sister if they wanted anything to drink. After they left the bathroom, the victim told Tina what had happened. The victim said that Tina went to talk with appellant, and when she came back, she seemed upset.
 {¶ 7} The victim spent that night at appellant's and Tina's house. The following day, the victim and her sister were picked up by their aunt, Shelly Lyle ("Lyle.") The victim then spent the weekend with her grandparents. The victim stated that she did not tell Lyle or her grandparents about the incident because she wanted to wait until her parents returned. The victim told her mother when the Frazees got back from Florida.
 {¶ 8} In his testimony at trial, Robert Frazee stated for the state that a couple of weeks before the honeymoon, the victim mentioned a prior incident which made her feel uncomfortable around appellant with respect to the way he had touched her on the leg.
 {¶ 9} According to Dana Frazee, who also testified for the state, the victim had a very difficult time telling her about the incident at issue. Dana Frazee indicated that the victim kept running to the bathroom because she felt sick, and it took her more than two hours to tell her everything that happened. Dana Frazee called Pastor McKenzie, a pastor at her church, and told him what had happened. However, Dana Frazee stated that the victim did not want her to tell anyone else. Dana Frazee explained that the victim specifically did not want her father, Dan Peters, to know about the incident because she was afraid that he would become very angry and end up in jail.
 {¶ 10} On December 31, 2001, Lyle gave birth to a baby girl. Dana Frazee said that because Tina watched Lyle's baby, the victim became very bothered and was fearful of what appellant might do to the baby. On June 25, 2002, Dana Frazee contacted the Ashtabula County Children Services. Also, on June 25, 2002, the victim's stepmother, Bonnie Peters, took the victim to the hospital for a sexual exam. However, the exam never took place because Bonnie Peters did not have custody of the victim.
 {¶ 11} Frank Hocevar ("Hocevar"), an employee with the Ashtabula County Department of Job and Family Services, testified for the state that he and Detective Terry Moisio ("Detective Moisio"), a detective with the Ashtabula County Sheriff's Office, interviewed appellant on July 29, 2002. In that interview, appellant denied the victim's accusations concerning the incident on July 23, 2001. However, both Hocevar and Detective Moisio explained that appellant indicated that on one occasion, the victim sat on appellant's lap and he became sexually aroused, but he became ashamed and immediately pushed her off. Also, Detective Moisio stated that appellant said he accidentally touched the victim's leg and vagina as a gesture to wake her up.
 {¶ 12} According to appellant, he told the victim not to play with certain toys and he threatened to spank her in front of the other children. Appellant testified that the victim fell asleep on the couch while watching a movie. Appellant explained that he grabbed the victim on her knee to wake her up, his hand slipped up to her shorts, and he was shocked. Appellant stressed that it was an accident, and he did not touch her in any sexual way. Appellant said that when the kids would wrestle on his lap, he would get an erection and would put them down. After appellant was contacted by Detective Moisio on July 11, 2002, he went to the station the following day and gave a statement that he never touched the victim. However, in his later interview, appellant indicated that he accidentally touched the victim's genital area.
 {¶ 13} Pursuant to its April 30, 2003 judgment entry, the trial court sentenced appellant to a three-year prison term. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 14} "[1.] The trial court erred, to the prejudice of [appellant], when it failed to correctly and completely instruct the jury on each and every element of the charge of gross sexual imposition.
 {¶ 15} "[2.] The [s]tate committed prosecutorial misconduct in its closing argument when it repeatedly misstated the elements of the crime from which [appellant] was charged and improperly commented upon the credibility of the witnesses.
 {¶ 16} "[3.] Appellant was denied the effective assistance of trial counsel."
 {¶ 17} In his first assignment of error, appellant argues that the trial court erred when it failed to correctly and completely instruct the jury on each and every element of the charge of gross sexual imposition. Appellant stresses that the trial court erred in failing to instruct the jury on the essential element of purposely.
 {¶ 18} This court stated in State v. Gordon (Mar. 22, 1996), 11th Dist. No. 92-A-1696, 1996 Ohio App. LEXIS 1078, at 3-4, that:
 {¶ 19} "[i]t is well established that `the failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would havebeen otherwise.' (Emphasis added.) State v. Underwood (1983),3 Ohio St.3d 12 * * *, syllabus, quoting State v. Long (1978),53 Ohio St.2d 91 * * *; Crim.R. 52(B). Furthermore, `notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' Long, paragraph three of the syllabus."
 {¶ 20} In State v. Williams (1989), 52 Ohio App.3d 19, the defendant was sentenced for gross sexual imposition of a minor child who was less than thirteen years old. The defendant alleged that the trial court erred in failing to issue the proper jury instructions with respect to intent. Id. at 21. The court disagreed and held that R.C. Chapter 2907 "is designed to protect victims of sexual crimes. The offenses for which the defendant was charged require no precise culpable state of mind. Rather, all that is required is a showing of the proscribed sexual contact." Id.
 {¶ 21} In the case at bar, appellant was indicted and sentenced for gross sexual imposition, in violation of R.C. 2907.05(A)(4).
 {¶ 22} R.C. 2907.05(A)(4) provides that: "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more persons to have sexual contact when * * * [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 23} R.C. 2907.01(B) defines sexual contact as "* * * any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 24} "It is sufficient to present circumstantial evidence from which the finder of fact can infer the purpose of the act was for sexual gratification; no direct evidence of the accused's mental state is required." State v. Tennyson (Nov. 21, 2001), 11th Dist. No. 98-L-219, 2001 Ohio App. LEXIS 5211, at 8, citing State v. Said (Mar. 26, 1993), 11th Dist. No. 92-L-018, 1993 Ohio App. LEXIS 1751, at 16.
 {¶ 25} Here, based on Gordon and Long, supra, appellant's counsel failed to object to the trial court's jury instructions and, thus, waived any claim, absent plain error, with respect to the term "purposely." Again, pursuant to R.C. 2907.05(A)(4), the state was required to prove that appellant had sexual contact with someone less than thirteen years of age. As such, appellant cannot demonstrate plain error because it was not necessary for the trial court to give a jury instruction regarding "purposely" since R.C. 2907.05(A)(4) does not mention purpose. Also, according to Williams, supra, R.C. 2907.05(A)(4) does not require a precise culpable state of mind, but rather only a showing of the proscribed sexual contact.
 {¶ 26} R.C. 2907.01(B) mentions "purpose" in its definition of sexual contact. However, pursuant to Tennyson and Said, supra, no direct evidence of appellant's mental state is required. Rather, circumstantial evidence is sufficient from which the finder of fact could infer that the purpose of the act was for sexual gratification. Based on the evidence presented, reasonable jurors could infer that appellant's placing of his hand underneath the victim's underwear and inside her, as well as feeling her private area, was sexually stimulating. See, e.g., In re Bloxson
(Feb. 6, 1998), 11th Dist. No. 97-G-2062, 1998 Ohio App. LEXIS 420, at 5. Appellant's first assignment of error is without merit.
 {¶ 27} In his second assignment of error, appellant contends that the state committed prosecutorial misconduct in its closing argument when it repeatedly misstated the elements of the crime from which he was charged and improperly commented upon the credibility of the witnesses with respect to the prosecutor's personal beliefs.
 {¶ 28} The Supreme Court in State v. Slagle (1992), 65 Ohio St.3d 597,607, stated: "when we review a prosecutor's closing argument we ask two questions: `whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.' State v.Smith (1984), 14 Ohio St.3d 13, 14 * * *. The closing argument is considered in its entirety to determine whether it was prejudicial. Statev. Moritz (1980), 63 Ohio St.2d 150, 157 * * *." (Parallel citations omitted.)
 {¶ 29} "Counsel is generally given latitude during closing arguments to state what the evidence has shown and what inferences can be made by the jury." State v. Hearns, 11th Dist. No. 2002-P-0050, 2004-Ohio-385, at ¶ 15, citing State v. Davis (1996), 76 Ohio St.3d 107, 117. In determining whether the prosecutor's statements affected a substantial right of the defendant, an appellate court should consider the following factors: "(1) the nature of the remarks; (2) whether an objection was made by defense counsel; (3) whether the court gave any corrective instructions; and (4) the strength of the evidence presented against the defendant." Hearns, supra, at ¶ 15, citing State v. Braxton (1995),102 Ohio App.3d 28, 41.
 {¶ 30} An attorney should avoid expressing personal beliefs or opinions regarding the guilt of the accused as well as the credibility of witnesses. State v. Kish, 11th Dist. No. 2001-L-014, 2002-Ohio-7130, at ¶ 51, citing State v. Lott (1990), 51 Ohio St.3d 160, 166. "[I]t is not improper for a prosecutor to comment upon the evidence in his closing argument and to state the appropriate conclusions to be drawn therefrom. Accordingly, a prosecutor may comment fairly on a witness' credibility based upon his or her in-court testimony." (Emphasis sic.) Kish at ¶ 52, citing State v. Keene (1998), 81 Ohio St.3d 646, 666.
 {¶ 31} We stated in State v. McDade (June 26, 1998), 11th Dist. No. 96-L-197, 1998 Ohio App. LEXIS 2927, at 12-13, that: "[a] prosecutor needs to be very careful when he or she uses the term `lies' or `liar' in reference to the defendant or the defendant's statements. * * * [P]ointing out a discrepancy or an inconsistency is not an entitlement to set forth a prosecutor's personal belief as to who is telling the truth and who is not. He or she can clearly point out that one of the two parties must be `lying' about the event. However, the prosecutor is not free to speculate to the jury as to who he or she thinks the liar is."
 {¶ 32} In the case sub judice, appellant directs this court's attention to the following statements made by the prosecutor during closing arguments:
 {¶ 33} "It doesn't matter if [appellant's] hand accidentally slipped. * * * It doesn't matter if [appellant] says his hand accidentally slipped.
 {¶ 34} "* * *
 {¶ 35} "Now, [appellant's] going to say it was an accident. But there's no place here that says he has to intend to do it. It was no accident.
 {¶ 36} "* * *
 {¶ 37} "The fact of the matter is, time is not an issue. It doesn't matter how long [appellant's] hand was around [the victim's] private area or on her private area. It doesn't matter one bit. The fact of the matter is his hand was there.
 {¶ 38} "* * *
 {¶ 39} "The fact of the matter is, is [appellant] had contact when he was not supposed to have with an 11 year old girl and he got caught. As a matter of fact, he was still lying up on the stand today until he realized that we knew differently.
 {¶ 40} "* * *
 {¶ 41} "[Appellant's] testimony up there, as well as his testimony in various parts of his statements, are nothing more than an attempt to get out of this dilemma. To back peddle his way out of something he knows from day one that he did wrong.
 {¶ 42} "* * *
 {¶ 43} "[The alleged victim] has no motive to get up there to lie because he disciplined her almost a year later.
 {¶ 44} "* * *
 {¶ 45} "* * * I ask you one more time to ask yourselves would you, for five minutes, let your daughter or your granddaughter be alone with [appellant]? If you can't honestly say that you would not let him be alone with your child, your daughter or your granddaughter, I ask that you find him guilty."[1]
 {¶ 46} Here, appellant's contention that the incident at issue was an "accident" is relevant under R.C. 2907.05(A)(4). As such, there was prosecutorial misconduct with respect to the prosecutor's remarks regarding appellant's accident defense. Also, pursuant to McDade, supra, the prosecutor committed misconduct by improperly expressing her personal belief or opinion in her comment that appellant was lying on the stand. In addition, the prosecutor committed misconduct by stating to the jury that they should find appellant guilty if they would not let him be alone with their child, daughter, or granddaughter. The prosecutor improperly suggested to the jury that they should feel like they were the victim. The trial court erred by overruling appellant's counsel's objection to that statement. Pursuant to Slagle, supra, the prosecutor's remarks were improper. Thus, the prosecutor's closing argument did prejudicially affect substantial rights of appellant. Therefore, appellant's second assignment of error is with merit.
 {¶ 47} In his third assignment of error, appellant alleges that he was denied the effective assistance of trial counsel. Appellant stresses that his trial counsel was ineffective for failing to seek a jury instruction defining the term "purposely" as an essential element to the charge of gross sexual imposition.
 {¶ 48} Strickland v. Washington (1984), 466 U.S. 668, 687 states:
 {¶ 49} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 50} "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at paragraph two of the syllabus. State v. Bradley
(1989), 42 Ohio St.3d 136, 142, quoting Strickland, supra, at 694, states: "[t]o warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 51} This court stated in State v. Rudge (Dec. 20, 1996), 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807, at 35-36, that: "`[s]trategic and tactical decisions will not form the basis of a claim of ineffective assistance of counsel, even if there had been a better strategy available to him. * * *' `"Errors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel." * * *.' State v. Lundgren (Apr. 22, 1994), [11th Dist. No. 90-L-15-125, 1994 Ohio App. LEXIS 1722], at 40-41."
 {¶ 52} In the instant matter, the state had no duty to prove that appellant acted purposely. Again, R.C. 2907.05(A)(4) does not mention purpose. Rather, R.C. 2907.05(A)(4) requires the state to prove that appellant had sexual contact with someone less than thirteen years of age. As such, appellant's trial counsel had no duty to request a jury instruction on the term "purposely." Thus, based on Strickland, supra, appellant failed to show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. Appellant's third assignment of error is without merit.
 {¶ 53} For the foregoing reasons, appellant's first and third assignments of error are not well-taken, and appellant's second assignment of error has merit. The judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded.
Rice, J., concurs, Grendell, J., concurs in part, dissents in part, with a Dissenting Opinion.
[1] We must note that prior to this last statement, the prosecutor stated the following: "I do have a strong burden. I have a burden of beyond a reasonable doubt." Also, appellant's counsel objected to this last statement, which was overruled by the trial court.