OPINION
{¶ 1} Defendant-appellant, Bruce A. Curtis, appeals his convictions in the Butler County Court of Common Pleas for attempted sexual battery and sexual imposition. For the reasons outlined below, we affirm.
 {¶ 2} On August 1, 2007, appellant, a pastor at Community Friendship Church in Hamilton, Ohio, was indicted on one count of attempted sexual battery in violation of R.C. 2923.02 and R.C. 2907.03(A)(12), a felony of the fourth degree, and one count of sexual *Page 2 
imposition in violation of R.C. 2907.06(A)(1), a third-degree misdemeanor, after it was alleged that he engaged in unlawful sexual contact with then 17-year-old M.B., on or about February 21, 2007.[1]
 {¶ 3} Appellant's trial on the charges was held on December 3-4, 2007. At trial, M.B. testified that she had known appellant as both her godfather and pastor for several years since becoming a member of Community Friendship in 1996. The state presented evidence that at the time of the incident, appellant had been counseling M.B. on a personal situation involving an ex-boyfriend, and was making visits to her home.
 {¶ 4} According to M.B., on the date of the incident her mother was working and she was home alone. Appellant called M.B. in the morning and asked if anyone was home with her and whether he could stop by and bring her breakfast. M.B. agreed and after delivering breakfast, appellant asked to come inside the house.
 {¶ 5} M. B. testified that once inside, appellant began discussing his marital problems, and the conversation quickly turned to issues regarding sex and sexual acts. According to M.B., appellant told her that his wife did not want to engage in certain sex acts with him. M.B. stated that she repeatedly told appellant that she felt uncomfortable about his statements, but did not "want to be rude and tell him to stop talking about [sex and sexual acts]," because he was her pastor and she trusted him. M.B. testified that at one point, appellant asked her whether she thought "if a man entered a woman, and he didn't move, would that be sex?" M.B. replied that she thought it would be sex. M.B. also testified that appellant asked her to demonstrate the "doggie-style" sexual position.
 {¶ 6} According to M.B., appellant then began discussing fellatio, stating that it was *Page 3 
"another thing that his wife didn't want to do." He asked M.B. if she would perform fellatio on him. M.B. testified that appellant took off his coat, "rushed" over to an ottoman in the room, and pulled down his pants and underwear, holding his penis and exposing it to M.B.. Appellant asked M.B. to come over to him. According to M.B., she turned her head away because she "didn't want to see [his penis]," and told appellant that she did not want to perform fellatio on him. Appellant then pulled up his pants and walked over to M.B.. He told her that he was sorry, and that he loved her. Appellant asked M.B. to hug him, and to let him "hold" her. M.B. testified that she told appellant she felt uncomfortable hugging him because he was her pastor.
 {¶ 7} According to M.B., appellant then told her that a covenant in the Bible required both of them to touch each other's "private parts" in order for them "to be ashamed like we were both keeping a secret." At that point, appellant placed his hand down the front of M.B.'s pants beneath her underwear and touched her stomach and pubic hair. M.B. stated that appellant told her that it would be better if she "just touched him back." She testified that she pulled appellant's wrist away and told him to stop.
 {¶ 8} M.B. informed her mother of the incident and reported it to the Fairfield Police Department. Detective Sandra Sears interviewed both M.B. and appellant. Prior to questioning, Detective Sears gave appellant his Miranda warnings and appellant signed a waiver of his rights. Appellant then completed a written statement, which was admitted without objection at trial. In the statement, appellant admitted to being at M.B.'s house on the day in question, and stated that their conversation "got intense about sex [and] drugs." According to appellant, he asked M.B. if she wanted to perform fellatio on him "because of the way she was talking." He also admitted to touching her stomach to "make an agreement that this was over and it would never happen again." Detective Sears testified that during the interview, appellant admitted to pulling down his pants, but denied exposing his penis to M.B. *Page 4 
According to Sears, appellant also admitted to touching M.B.'s pubic hair.
 {¶ 9} Appellant was tried by a jury and convicted of the attempted sexual battery and sexual imposition charges. The trial court sentenced him to 15 months imprisonment on the attempted sexual battery charge, and 30 days imprisonment on the sexual imposition charge. The trial court ordered the sexual imposition sentence to run concurrently with the sentence for attempted sexual battery.
 {¶ 10} Appellant appeals his convictions, raising four assignments of error for our review. For ease of discussion, appellant's assignments of error will be addressed out of order.
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "THE TRIAL COURT VIOLATED [THE] SUBSTANTIAL RIGHTS OF DEFENDANT-APPELLANT BY FAILING TO SUSTAIN HIS PRETRIAL CRIM.R. 12(B) MOTION(S) FOR DISMISSAL WHERE A DEFECTIVE INDICTMENT WHICH LACKS [THE] ESSENTIAL ELEMENTS OF THE OFFENSES FAILED TO CHARGE AN OFFENSE."
 {¶ 13} In his first assignment of error, appellant argues that his constitutional rights were violated because the trial court failed to sustain his pretrial motion to dismiss the indictment pursuant to Crim. R. 12(B). Specifically, appellant contends that count one of the indictment for attempted sexual battery under R.C. 2923.02 and R.C. 2907.03(A)(12) was defective because the state omitted "knowingly" as the requisite intent element of attempt, and omitted "recklessly" as the requisite intent element of sexual battery.
 {¶ 14} The Ohio Supreme Court has determined that the mental state of the offender is part of every criminal offense in Ohio except for those offenses imposing strict liability. State v. Lozier, 101 Ohio St.3d 161,2004-Ohio-732, at ¶ 18. In order to be found guilty of a criminal offense, R.C. 2901.21(A)(2) requires a person to have "the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the *Page 5 
offense." Id., quoting R.C. 2901.21(A)(2). Therefore, in resolving this assignment of error, we must first examine the attempt and sexual battery statutes to determine the applicable culpability required for the commission of each offense.
 Criminal Attempt {¶ 15} Ohio's attempt statute, R.C. 2923.02(A), provides: "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." An attempt to commit an offense is an offense in itself. See State v.Lawrence, Butler App. No. CA2007-01-017, 2008-Ohio-1354, ¶ 29. The committee comments to R.C. 2923.02(A) provide that an attempt must be purposely or knowingly committed.
 {¶ 16} In construing the statute, the Ohio Supreme Court has concluded that "the essential elements of a criminal attempt are the me[n]s rea of purpose or knowledge, and conduct directed toward the commission of an offense." State v. Woods (1976), 48 Ohio St.2d 127, 131, death penalty vacated (1978), 438 U.S. 910, 98 S.Ct. 3133, overruled on other grounds by State v. Downs (1977), 51 Ohio St.2d 47. A criminal attempt is complete when a defendant's conduct or acts constitute a substantial step in a sequence of events designed to result in the perpetration of a crime. See State v. Kane (Apr. 23, 1984), Clermont App. No. CA83-09-076,1984 WL 3309 at *3, citing Woods at paragraph one of the syllabus. A substantial step involves conduct which is "strongly corroborative of the actor's criminal purpose." Woods at paragraph one of the syllabus.
 {¶ 17} In accordance with R.C. 2923.02(A), Ohio appellate courts have determined that the culpable mental state for attempt is either purposely or knowingly, depending on the culpability required to commit the underlying offense. See e.g., State v. Taylor, Lorain App. No. 06CA009000, 2008-Ohio-1462, ¶ 56 (concluding that because the culpable mental state to commit aggravated arson is knowingly, the attempted commission of the crime also requires *Page 6 
the culpability of knowingly); see, also State v. Patterson, Trumbull App. No. 96-T-5439, 1998 WL 310737, at *4 (noting that "since purpose is the culpable mental state required to commit murder under R.C. 2903.02, then the commission of attempted murder pursuant to R.C. 2923.02
requires purposefulness as well"). However, we note that there is an absence of case law on the required mens rea for the commission of an attempt when the underlying crime is one of strict liability. R.C. 2923.02(A) provides little guidance on the intent of the general assembly with respect to this issue.
 Sexual Battery {¶ 18} Division (A)(12) of R.C. 2907.03 provides, in pertinent part:
 {¶ 19} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 {¶ 20} "* * *
 {¶ 21} "(12) The other person is a minor, the offender is a cleric, and the other person is a member of, or attends, the church or congregation served by the cleric."
 {¶ 22} Sexual conduct includes, "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. * * *" R.C. 2907.01. (Emphasis added.)
 {¶ 23} Division (A)(12) was added in 2006 to "expand the offense of `sexual battery' to also prohibit a cleric from engaging in sexual conduct with a minor who is a member of, or attends, the church or congregation served by the cleric * * *." See Am. Sub. S.B. 17, 2006 Ohio Laws File 97. It does not specify a culpable mental state for the commission of the offense. "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in *Page 7 
the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." Lozier,101 Ohio St.3d 161, 2004-Ohio-732 at ¶ 20, citing R.C. 2901.21(B).
 {¶ 24} Our research has not revealed any case law interpreting division (A)(12) of R.C. 2907.03. However, in State v. Singleton, Lake App. No. 2002-L-077, 2004-Ohio-1517, the Eleventh District Court of Appeals was confronted with the question of whether an alleged violation of division (A)(5) of the statute is a strict liability offense. InSingleton, a father was convicted of sexual battery for engaging in sexual conduct with his daughter. Id. at ¶ 1. R.C. 2907.03(A)(5) provides that no person shall engage in sexual conduct with another, not the spouse of the offender when "[t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." Id. at ¶ 50-52. Citing R.C. 2901.21(B), the father argued that because the division was silent on the required culpability to commit the offense, the state was required to prove that he acted recklessly. Id. at ¶ 48, 53-54.
 {¶ 25} The court of appeals rejected the father's argument, holding that the language of division (A)(5) of R.C. 2907.03 plainly indicated a legislative purpose to impose strict liability. Id. at ¶ 55. In reaching this conclusion, the court thoroughly examined each of the divisions of the statute, and noted that while liability under some is premised onknowingly committing an act, [2] other divisions, including (A)(5), do not specify any degree of culpability. Id. at ¶ 56. (Emphasis added.) The court reasoned that those divisions not specifying any degree of culpability are "designed to protect those under the direct control or supervision of another, i.e., children and their parents, hospital or institutional patients, students. It seems clear that *Page 8 
the legislature intended to impose strict liability in these instances to protect the most vulnerable members of society." Id. In addition, the court determined that because division (A)(5) requires the jury to find the existence of a specific factual condition, i.e., immediate kinship, the legislature made clear its intent to impose strict liability. Id. at ¶ 57.
 {¶ 26} In this case, although appellant argues that "recklessness" is the appropriate culpability to commit the offense of sexual battery under division (A)(12), the Eleventh District's analysis of the statute in Singleton supports our determination that the general assembly intended a violation of division (A)(12) of R.C. 2907.03 to constitute a strict liability offense for which no culpability is required. The relationship between a pastor and a minor church member or attendee is akin to that of a parent-child or teacher-student relationship, as it involves elements of control and supervision. Id. at ¶ 56. In addition, a strict liability interpretation is supported by the fact that division (A)(12) requires the finding of a specific factual condition, i.e., that the defendant is a cleric and the alleged minor victim is a member of, or is attending the defendant's church. Id. at ¶ 57.
 {¶ 27} Our conclusion is also supported by the interpretation of other sections in Chapter 2907 of the Revised Code. In determining that the general assembly clearly intended to impose strict liability for a violation R.C. 2907.321(A)(6), which criminalizes pandering obscenity involving a minor, the Ohio Supreme Court noted that the general assembly "has assumed a strong stance against sex-related acts involving minors, as evidenced by the numerous statutes in the Ohio Revised Code providing for criminal liability for those acts." State v. Maxwell,95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 30.
 Count One of the Indictment {¶ 28} Count one of the indictment provides as follows:
 {¶ 29} "On or about February 21, 2007, at Butler County, Ohio, Bruce A. Curtis did, [sic] attempt to engage in sexual conduct with another, not the spouse of the offender, when *Page 9 
the other person was a minor, the offender is a cleric, and the other person is a member of, or attends, the church or congregation served by the cleric, which constitutes the offense of ATTEMPTED SEXUAL BATTERY, a Fourth Degree Felony, in violation of R.C. § 2923.02-2907.03(A)(12), and against the peace and dignity of the State of Ohio."
 {¶ 30} The purpose of an indictment is to inform the accused that a charge has been lodged against him and to provide him with an indication of the nature of the charge. City of Middletown v. Blevins (1987),35 Ohio App.3d 65, 67. An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charge, and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Hamling v. United States
(1974), 418 U.S. 87, 117, 94 S.Ct. 2887.
 {¶ 31} As an initial matter, we note that appellant's motion to dismiss the indictment centered only on the issue of M.B.'s membership status at Community Friendship at the time of the incident. Although appellant failed to argue that the indictment was invalid because it did not include the requisite culpability elements for attempt and sexual battery, he has not waived this argument on appeal. This court has previously held that pursuant to Crim. R. 12(C)(2), a party's failure to challenge the validity of an indictment on the basis of jurisdiction or charging an offense may be raised directly on appeal. See State v.Colston, Clermont App. No. CA2004-11-099, 2005-Ohio-7031, ¶ 15.
 {¶ 32} Upon review, we conclude that the indictment for attempted sexual battery was sufficient and did not prejudice the substantial rights of appellant. In light of our determination that division (A)(12) of the sexual battery statute is a strict liability offense, no culpability element was required to be alleged in the indictment for the sexual battery charge.
 {¶ 33} In addition, although we question whether any culpability was required for the attempt given that the underlying offense was one of strict liability, the United States Supreme Court has determined that the use of the word "attempt" in an indictment incorporates both *Page 10 
the overt act and intent elements of the offense and is sufficient to satisfy constitutional requirements. United States v.Resendiz-Ponce (2007), 549 U.S. 102, 127 S.Ct. 782, paragraph two of the syllabus. The language of an indictment needs only to reference the relevant criminal statute and allege that the defendant "attempted" to engage in the unlawful conduct. Id. at 108. Accordingly, we conclude that it was sufficient for the indictment to allege that appellant "attempted] to engage in sexual conduct * * *." Appellant's first assignment of error is therefore overruled.
 {¶ 34} Assignment of Error No. 3:
 {¶ 35} "THE [sic] DEFENDANT-APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 36} In his third assignment of error, appellant argues that his convictions for attempted sexual battery and sexual imposition are against the manifest weight of the evidence. In considering a manifest weight challenge, an appellate court must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v. Hubbard, Warren App. No. CA2007-01-008, 2008-Ohio-2630, ¶ 8, citing State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. The question is whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Bryant, Warren App. No. CA2007-02-024, 2008-Ohio-3078, ¶ 30.
 {¶ 37} In performing its review, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the appropriate weight to be given the evidence. Hubbard at ¶ 14, citing State v. DeHass (1967),10 Ohio St.2d 230, 231. A reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury. State v. Benge,75 Ohio St.3d 136, 143, 1996-Ohio-227. "The discretionary power to grant a new trial should be exercised only in the exceptional case in *Page 11 
which the evidence weighs heavily against the conviction." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 Attempted Sexual Battery Conviction {¶ 38} Appellant raises several issues for our review under his manifest weight challenge regarding his conviction for attempted sexual battery.
 {¶ 39} Initially, appellant argues that the state failed to prove that he acted with the requisite culpability in attempting to commit sexual battery. In resolving appellant's first assignment of error, we concluded that because division (A)(12) of R.C. 2907.03 is a strict liability offense, the state was not required to establish any culpable mental state for the sexual battery charge.
 {¶ 40} With respect to the attempt offense, we find that there was substantial evidence presented at trial from which the jury could reasonably conclude that the attempt to commit sexual battery was complete when appellant engaged in conduct that constituted a substantial step in a series of events designed to result in the commission of the crime. See Kane, Clermont App. No. CA83-09-076,1984 WL 3309 at *3, citing Woods at paragraph one of the syllabus. As previously discussed, a "substantial step" involves conduct which is strongly corroborative of the actor's criminal purpose. Woods
at paragraph one of the syllabus.
 {¶ 41} The state introduced evidence at trial that appellant asked M.B. to perform fellatio on him three times during the course of the incident. There was evidence that appellant sat down on an ottoman in the room, pulled down his pants and underwear, and exposed his penis to M.B.. In his written statement, appellant admitted to pulling down his pants and asking M.B. to perform fellatio because he thought it was "what [M.B.] wanted to do." On these facts, the jury could have determined that appellant's actions were strongly corroborative of his criminal purpose, i.e., to elicit fellatio from a minor. SeeWoods at 132.
 {¶ 42} Appellant also argues that the state failed to establish that appellant met the *Page 12 
statutory definition of a "cleric," or that Community Friendship was a "legally cognizable church, denomination, or sect" pursuant to R.C. 2317.02. In support of this argument, appellant contends that the state was required to present evidence of appellant's licensure or ordainment proceedings, as well as Community Friendship's articles of incorporation and federal and state tax returns. We disagree.
 {¶ 43} As referenced in the sexual battery statute, the term "cleric" is defined as "a member of the clergy, rabbi, priest, Christian Science practitioner, or regularly ordained, accredited, or licensed minister of an established and legally cognizable church, denomination, or sect." R.C. 2317.02 (C)(2)(a). At trial, several members of appellant's congregation testified that appellant was their "pastor." In his written statement, appellant also identified himself as M.B.'s pastor. Community Friendship's "official manual," which was introduced into evidence at trial, defines a pastor generally as "the minister appointed over a congregation." Given the broad definition in R.C. 2317.02 and the definition of pastor contained in the official church manual, the jury could have reasonably concluded that appellant's position at Community Friendship fit within the statutory definition of a "cleric."
 {¶ 44} In addition, M.B.'s brother, who testified to being a member of Community Friendship, also testified that the church was affiliated with the Church of God in Christ. The name "Church of God in Christ,Incorporated," appears on the title page of the church manual. (Emphasis added.) Based on this evidence, the jury could conclude that Community Friendship constituted an "established and legally cognizable church, denomination, or sect" under R.C. 2317.02(C)(2)(a).
 {¶ 45} Appellant further contends that the state failed to prove that M.B. was a member of appellant's church at the time of the incident. Contrary to appellant's argument, the state was not required to prove that M.B. was a "member" of Community Friendship. Under R.C. 2907.03(A)(12), a conviction may also be obtained if there is evidence that the minor *Page 13 
"attends" the church or congregation served by the cleric.
 {¶ 46} M.B.'s membership status and attendance record were disputed at length at trial. M.B. testified that she had stopped attending Community Friendship in November of 2006 due to her mother's weekend work schedule, and because the family often lacked reliable transportation. However, the state presented evidence that appellant had been performing pastoral duties, including counseling M.B., during the family's absence from church.
 {¶ 47} Moreover, there was significant evidence presented that prior to November of 2006, M.B. and her family members were actively involved in the church. M.B.'s sister and mother testified to routinely attending church services on Tuesdays, Fridays and Sundays each week. M.B. also testified that her family would attend church "revivals," during which services would be held on a daily basis for one week. M. B. and her mother testified that they contributed money to the church in the form of offerings and tithes, and that the family had participated in several church activities and committees. There was also evidence that the family had taken extended absences from church in the past due to work schedule conflicts, but had always maintained their membership status. The church manual provided that temporary absenteeism would not affect a person's membership. Based on this evidence, the jury could have reasonably concluded that M.B. was a member of, or attended Community Friendship.
 {¶ 48} Upon a thorough review of the record, we conclude that there was substantial evidence presented at trial from which the jury could convict appellant of attempted sexual battery. Therefore, it cannot be said that the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction must be reversed and a new trial ordered. See Bryant, Warren App. No. CA2007-02-024,2008-Ohio-3078 at ¶ 30.
 Sexual Imposition Conviction *Page 14 {¶ 49} Appellant has also asserted a manifest weight challenge with regard to his conviction for sexual imposition.
 {¶ 50} Ohio's sexual imposition statute, R.C. 2907.06(A)(1), provides, in part: "[n]o person shall have sexual contact with another, not the spouse of the offender; * * * when [t]he offender knows that the sexual contact is offensive to the other person, * * * or is reckless in that regard." Sexual contact means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock,pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." See R.C. 2907.01 (B). (Emphasis added.)
 {¶ 51} Upon review of the evidence relating to this charge, we conclude that the jury could have reasonably convicted appellant of sexual imposition. First, there was evidence from which the jury could have concluded that appellant had sexual contact with M.B., because there was evidence that appellant touched M.B.'s "pubic region" by touching her pubic hair. See R.C. 2907.01(B).
 {¶ 52} Second, there was evidence that the sexual contact was made for the purpose of sexually arousing or gratifying appellant. The Ohio Revised Code does not define "sexual arousal" or "sexual gratification."State v. Gesell, Butler App. No. CA2005-08-367, 2006-Ohio-3621, ¶ 23, citing In re Anderson (1996), 116 Ohio App.3d 441, 443. However, "R.C. 2907.01(B) `contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying.'" Id., quoting State v. Astley (1987), 36 Ohio App.3d 247,250. In addition, "`[w]hile the purpose of sexual arousal or gratification is an essential element of the offense of * * * sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification * * *.'" Id. at ¶ 25. (Internal citations omitted). The proper method to determine whether sexual contact occurred is to permit the trier of fact to infer from the evidence presented whether the defendant's contact *Page 15 
with those areas of the body described in R.C. 2907.01 was made for sexual arousal or gratification. Id. at ¶ 24. In this case, there was evidence that appellant placed his hand down the front of M.B.'s pants, touched her pubic hair, and told her to touch him back. A reasonable jury could certainly infer that this contact was made for the purpose of sexually arousing or gratifying appellant.
 {¶ 53} Finally, there was evidence that appellant knew that the sexual contact was offensive to M.B., or was reckless with regard to whether it was offensive. A person acts "knowingly" when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. See R.C. 2901.22(B). A person acts recklessly "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." See R.C. 2901.22(C).
 {¶ 54} M.B. testified that she repeatedly told appellant that she did not feel comfortable with his statements regarding sex and sexual acts. M.B. told appellant that she did not want to perform fellatio on him, and testified that when appellant placed his hand down the front of her pants, she pulled his wrist away and told him to stop. On this evidence, the jury could have reasonably concluded that appellant knew the sexual contact was offensive to M.B., or acted recklessly with regard to whether it was offensive to her.
 {¶ 55} Upon a thorough review of the record, we find that appellant's conviction for sexual imposition is not against the manifest weight of the evidence.
 {¶ 56} Based upon the foregoing, appellant's third assignment of error is overruled.
 {¶ 57} Assignment of Error No. 2:
 {¶ 58} "THE TRIAL COURT VIOLATED THE [sic] DEFENDANT-APPELLANT'S DUE
PROCESS RIGHTS BY OVERRULING HIS MOTION(S) FOR CRIM.R. 29 ACQUITTAL."
 {¶ 59} In his second assignment of error, appellant argues that the trial court violated *Page 16 
his due process rights by overruling his motions for acquittal of attempted sexual battery under Crim. R. 29. Appellant's arguments are nearly identical to those made under his third assignment of error. Appellant contends that the state failed to establish that M.B. was a member of Community Friendship at the time of the incident, and that appellant was a "cleric" as defined in R.C. 2317.02(C)(2)(a). Appellant further argues that the state did not present sufficient evidence of the alleged attempted sexual conduct.
 {¶ 60} Pursuant to Crim. R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." The purpose of a motion for acquittal is to "test[ ] the sufficiency of the evidence presented at trial." State v. Terry, Fayette App. No. CA2001-07-012, 2002-Ohio-4378, ¶ 9, citing State v. Williams, 74 Ohio St.3d 569, 576, 1996-Ohio-91;State v. Miley (1996), 114 Ohio App.3d 738, 742. Therefore, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, paragraph one of the syllabus. A trial court's decision to deny a motion for acquittal based upon the sufficiency of the evidence will be upheld if, construing the evidence in a light most favorable to the state, any rational fact-finder could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 430,1997-Ohio-372.
 {¶ 61} Appellant moved for an acquittal on the attempted sexual battery charge at the close of the state's evidence, and renewed his motion at the close of all the evidence.[3] *Page 17 
Appellant argued that the state failed to establish that M.B. was a member of Community Friendship at the time of the incident. The trial court overruled appellant's motions.
 {¶ 62} After the jury returned guilty verdicts, appellant filed a written motion for a new trial and/or acquittal.[4] In that motion, he renewed his argument that the state failed to establish the requisite elements for attempted sexual battery because there was insufficient evidence presented that M.B. was a member of appellant's church. Appellant's motion was again overruled by the trial court.
 {¶ 63} It is axiomatic that a reviewing court will not consider an error that an appellant was aware of, yet failed to bring to the trial court's attention. State v. Robinson, Summit App. No. 22973,2006-Ohio-5879, ¶ 23, citing State v. Awan (1986), 22 Ohio St.3d 120,122. "If an appellant sets forth specific grounds in his motion for acquittal, he waives review of all grounds not specified." Id. As grounds for his motion, appellant argued only that the evidence was insufficient to establish that M.B. was a member of Community Friendship. Appellant did not include any of the other aforementioned arguments as the basis for his challenge, i.e., that the state failed to establish that appellant was a "cleric" pursuant R.C. 2317.02(C)(2)(a), or that the state failed to present sufficient evidence of the alleged attempted fellatio. In failing to raise those arguments with the trial court, he has waived them on appeal.
 {¶ 64} In our disposition of appellant's manifest weight challenge, we concluded that there was substantial evidence presented which, if believed by the jury, would support its conclusion that M.B. was a member of, or was attending Community Friendship at the time of the incident. This court has previously determined that because a finding of sufficient evidence is required to take a case to the jury, a finding that a conviction is supported by the *Page 18 
weight of the evidence must necessarily include a finding of sufficiency. See State v. Wilson, Warren App. No. CA2006-01-007,2007-Ohio-2298, ¶ 35. A determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. Id. Accordingly, appellant's second assignment of error is overruled.
 {¶ 65} Assignment of Error No. 4:
 {¶ 66} "THE TRIAL COURT VIOLATED [THE] SUBSTANTIAL RIGHTS OF THE [sic] DEFENDANT BY ERRONEOUSLY INSTRUCTING THE JURY ON THE ELEMENTS OF ATTEMPTED SEXUAL BATTERY AND SEXUAL IMPOSITION."
 {¶ 67} In his fourth assignment of error, appellant argues that the trial court erroneously instructed the jury on the culpability elements of attempted sexual battery and sexual imposition. Appellant further contends that the trial court failed to accurately define the essential elements of "cleric" and "member." With respect to the sexual imposition charge, appellant argues that the trial court failed to define "purpose" in the instructions, and did not include an instruction regarding corroborating evidence under R.C. 2907.06(B).
 {¶ 68} A trial court must give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and fulfill its duty as the fact finder. State v. Comen (1990), 50 Ohio St.3d 206,210. The decision to give or not give a jury instruction generally lies within the trial court's sound discretion, and the court's exercise of that discretion will not be overturned absent an abuse thereof.State v. Martens (1993), 90 Ohio App.3d 338, 343. An abuse of discretion means the court's decision is arbitrary, unconscionable or unreasonable, rather than merely an error of law or judgment. Ashburn v. Roth, Butler App. Nos. CA2006-03-054, CA2006-03-070, 2007-Ohio-2995, ¶ 11.
 {¶ 69} An inadequate jury instruction that misleads the jury constitutes reversible error. Groob v. Keybank, 108 Ohio St.3d 348,2006-Ohio-1189, ¶ 32. However, a reviewing court may not reverse a conviction in a criminal case due to jury instructions unless "it is clear that *Page 19 
the jury instructions constituted prejudicial error." State v.McKibbon, Hamilton App. No. C-010145, 2002-Ohio-2041, at 4, citingState v. Adams (1980), 62 Ohio St.2d 151, 154. "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten (1973),414 U.S. 141, 146-147, 94 S.Ct. 396.
 Attempted Sexual Battery Instruction {¶ 70} As an initial matter, we find that the trial court did not err in failing to provide the intent element of "recklessly" in the sexual battery instruction, since a violation of division (A)(12) of R.C.2907.03 is a strict liability offense. With respect to the attempt offense, we note that the trial court initially gave an instruction which included the culpability element "knowingly." The court instructed the jury, in part, as follows:
 {¶ 71} "Attempt. The defendant is charged with an attempt to commit the offense of sexual battery. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about February 17th, 2007 * * * through February 24th, 2007 * * * the defendant engaged in conduct, which if successful, would have resulted in the commission of the offense of sexual battery.
 {¶ 72} "A criminal attempt is when one knowingly does or fails to do anything which is an act or commission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." (Emphasis added.)
 {¶ 73} After the instructions were read to the jury, but before it retired to begin deliberations, the court, on the state's request, amended the attempted sexual battery instruction and removed the term "knowingly" from the definition of attempt. Over appellant's objection, the trial court determined that the attempt charge did not require a culpability element because the underlying offense of sexual battery is a strict liability crime:
 {¶ 74} "THE COURT: I did have a question I wanted to ask you, and I should have *Page 20 
asked you earlier, and that is with respect to Count One, the attempt, the mental state associated with the attempt is knowingly, and knowingly is defined, of course, in Count Two, and Count One does not require a mental state of knowingly.
 {¶ 75} "Let me say it more accurately, sexual battery does not require a knowingly standard. So to attempt sexual battery, the Court questions whether knowingly is the appropriate mental state.
 {¶ 76} "[PROSECUTOR]: I believe the sexual battery is a strict liability [sic] and my understanding of an attempt is that the intent required would be the mens rea that is required to commit the offense or that leaves us with the —
 {¶ 77} "THE COURT: That's my question.
 {¶ 78} "[DEFENSE COUNSEL]: That doesn't make any sense, does it?
 {¶ 79} "THE COURT: So you're suggesting that there should be no culpable mental state?
 {¶ 80} "* * *
 {¶ 81} "THE COURT: Is the [s]tate asking that the term "knowingly" be removed from the attempt section?
 {¶ 82} "[PROSECUTOR]: Yes, [y]our Honor."
 {¶ 83} Although it removed "knowingly" from the instruction, the court defined a criminal attempt as "when one does or fails to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose."
 {¶ 84} Under the circumstances of this case, we conclude that the substantial step instruction provided to the jury sufficiently informed it of the requisite elements of the attempt charge. We also note that appellant has not argued that the jury was confused or misled by *Page 21 
the instruction provided, and has failed to demonstrate that the outcome of his trial was prejudicially affected by the attempt instruction. SeeTaylor, Lorain App. No. 06CA009000, 2008-Ohio-1462 at ¶ 56. In viewing the instruction as a whole, as required, we cannot conclude that the trial court's removal of the term "knowingly" constituted an abuse of its discretion. See Roth, 2007-Ohio-2995 at ¶ 11.
 {¶ 85} Appellant also argues that the trial court failed to accurately define the essential elements of "cleric" and "member" in the attempted sexual battery instruction. We note that appellant did not raise any specific objection with the trial court regarding the definition of cleric or member, nor did he offer a proposed instruction regarding the terms. In failing to object, appellant has waived all but plain error. See Crim. R. 52(B); State v. Degrey, Warren App. No. CA2004-05-058,2005-Ohio-5372, ¶ 19.
 {¶ 86} Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, however, under exceptional circumstances and only to prevent a miscarriage of justice."Degrey at ¶ 19, quoting State v. Ford, Cuyahoga App. No. 84138,2004-Ohio-5610, ¶ 23. Plain error does not exist unless it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland (1990), 50 Ohio St.3d 58, 62. The burden is on the defendant to show a violation of his substantial rights. State v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14.
 {¶ 87} Upon review, we find that the trial court did not err, much less commit plain error with respect to its instruction on the elements of "cleric" and "member." Contrary to appellant's argument, the trial court defined "cleric" as follows: "a member of the clergy, rabbi, priest, Christian science practitioner, or regularly ordained, accredited licensed minister of an established and legally cognizable church, denomination or sect." This definition is *Page 22 
nearly identical to the statutory language of R.C. 2317.02(C)(2)(a).
 {¶ 88} In addition, although R.C. 2907.03 does not specifically define the term "member," a conviction under division (A)(12) does not require proof of church membership. In accordance with R.C. 2907.03(A)(12), the trial court instructed the jury that before it could find appellant guilty, it had to find that M.B. was a member of, or attended the church or congregation served by appellant. Therefore, the trial court's instruction on these elements was sufficient and did not substantially prejudice appellant.
 Sexual Imposition Instruction {¶ 89} Appellant also challenges the court's jury instruction on the sexual imposition charge. Appellant argues that the court failed to define "purpose" with respect to the sexual contact element, and also argues that the trial court should have included an instruction regarding corroborating evidence under R.C. 2907.06(B).
 {¶ 90} The definition of sexual contact includes an express culpability requirement of "purpose." R.C. 2907.01(B); State v.Mundy, (1994), 99 Ohio App.3d 275, 295. Appellant did not object to the trial court's instruction on sexual imposition, which failed to define purpose. Since no objection was raised, appellant has waived all but plain error. See Crim. R. 52(B); Degrey, 2005-Ohio-5372 at ¶ 19.
 {¶ 91} Upon review of the instruction and the record, we conclude that the trial court did not substantially prejudice appellant in failing to provide the jury with the definition of purpose as an element of sexual contact. In addressing a similar argument, the Eleventh District Court of Appeals determined that a trial court's failure to instruct a jury that a defendant's sexual contact must have been made "purposely" did not rise to the level of plain error. State v. Breland, Ashtabula App. No. 2003-A-0066, 2004-Ohio-7238, ¶ 26. The court reasoned that although the definition mentions purpose, no direct evidence of the defendant's mental state is required. Id. As discussed in our disposition of appellant's third assignment of error, "it is *Page 23 
sufficient to present circumstantial evidence from which the finder of fact can infer the purpose of the act was for sexual gratification * * *." Id. at ¶ 24; Gesell, 2006-Ohio-3621 at ¶ 25.
 {¶ 92} In this case, the jury could reasonably infer that appellant's actions of placing his hand down the front of M.B.'s pants and touching her stomach and pubic hair, as well as telling M.B. to "touch him back," were made for the purpose of sexually arousing or gratifying himself.Breland at ¶ 26; Gesell at ¶ 25. Moreover, appellant has failed to show substantial prejudice, and that the outcome of the trial clearly would have been otherwise had the definition of "purpose" been given in the instruction. Moreland, 50 Ohio St.3d at 62.
 {¶ 93} With respect to appellant's argument that the trial court was required to provide an instruction on the corroboration requirement contained in R.C. 2907.06(B), that division states: "[n]o person shall be convicted of a violation of [section 2907.06] solely upon the victim's testimony unsupported by other evidence." The Ohio Supreme Court has concluded that the corroboration requirement is a question going to the legal sufficiency of the evidence, to be determined by the trial judge, not a question of proof, which is the province of the fact finder. State v. Economo, 76 Ohio St.3d 56, 60, 1996-Ohio-426, citingState v. Robinson (1910), 83 Ohio St. 136 at 143. Corroboration is not an element of the offense, but is merely an ancillary evidentiary requirement. See City of Akron v. Myers, Summit App. No. 20743, 2002-Ohio-1112 at 3, citing Economo at 60-62. Id. at 60-62. By submitting the charge of sexual imposition to the jury, the court found sufficient evidence of corroboration and did not err in failing to instruct the jury on this requirement. Id.
 {¶ 94} Appellant's fourth assignment of error is overruled.
 {¶ 95} Judgment affirmed.
BRESSLER, P.J., and POWELL, J., concur.
[1] Based on testimony at trial, the indictment was amended pursuant to Crim. R. 7(D) to reflect a change in the date of the alleged offense from February 21, 2007 to the period beginning February 17, 2007 and ending February 24, 2007. Appellant has not challenged this amendment on appeal.
[2] See R.C. 2907.03(A)(1)-(4).
[3] At that time, appellant also moved for an acquittal on the sexual imposition charge, arguing that the state failed to set forth corroborating evidence pursuant to R.C. 2907.06(B) to prove the sexual contact beyond a reasonable doubt.
[4] Appellant's subsequent motion for acquittal did not challenge the sufficiency of the evidence for the sexual imposition charge, and appellant has not challenged this on appeal. *Page 1